# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA

v.

SOKHA BHOPAL
THAI HOANG NGUYEN
DAVINDEI SINGH and
VATH LIM

CRIMINAL COMPLAINT

CASE NUMBER: 5:08-mj-00026 TAG

(If search warrant is issued regarding this complaint, indicate above the case number assigned.)

I, Trent O'Neill, being duly sworn, state the following is true and correct to the best of my knowledge and belief. Since between on or about September 4, 2008, and on or about September 19, 2008, in Kern County, and elsewhere, in the Eastern District of California, and elsewhere,

> The defendants did conspire to distribute and to possess with the intent to distribute 5 kilograms or more of cocaine, a Schedule II controlled substance,

in violation of Title 21, United States Code, Section(s) 841(a)(1), 841(b)(1)(A), and 846 with a minimum penalty of ten years imprisonment and a maximum penalty of life imprisonment, $4,000,000.00 dollar fine, and $100 penalty assessment.

I further state that I am a Special Agent with the Drug Enforcement Administration ("DEA") and that this complaint is based on the following facts:

See Attachment A.

Continued on the attached sheet and made a part hereof:   X Yes ___ No

_(signature)_
Trent O'Neill, Special Agent, DEA

Sworn to before me and subscribed in my presence,

September 19, 2008
(Date) at 8:36 p.m.

at Bakersfield, California
City and State)

Theresa A. Goldner, U.S. Magistrate Judge

_(Signature of Judicial Officer)_

## AFFIDAVIT

I, Trent O'Neill, Special Agent, Drug Enforcement Administration, United States Department of Justice, being duly sworn, do depose and state:

I have been employed as a Special Agent with the Drug Enforcement Administration since August, 2004, and am presently assigned to the Drug Enforcement Administration Resident Office in Bakersfield, California. I have successfully completed a sixteen (16) week DEA Basic Agent Training Academy at the Drug Enforcement Administration Academy in Quantico, Virginia. This training included instruction in the investigation of federal drug violations, including, but not limited to, Title 21, United States Code, Sections 841 and 846. I have discussed with numerous law enforcement officers, defendants, and informants, the methods and practices used by narcotics distributors.

In addition, I have completed various training provided by the DEA and local law enforcement agencies, including, but not limited to, training on identifying characteristics associated with the manufacture, sale, and transportation of various narcotics, including, but not limited to, methamphetamine, heroin, cocaine, and marijuana. This training involved the use, possession, packaging, sale, concealment, manufacturing, and transportation of various controlled substances, as well as its precursors and chemicals used in the manufacturing process. I am familiar with narcotics traffickers' methods of operation, including the distribution, storage, manufacturing, and transportation of narcotics and the collection of money proceeds of narcotics trafficking. I have assisted in the execution of multiple federal and state narcotics search warrants that resulted in the arrest of suspects and seizure of narcotics and narcotic proceeds.

I have participated in narcotics investigations either as a case agent or in a supporting

1

role. I have debriefed defendants, informants, and witnesses who had personal knowledge regarding narcotics trafficking organizations. Additionally, I have participated in many aspects of drug investigations, including, but not limited to, undercover operations, physical and electronic surveillance, and arrests. I have conducted and been involved in numerous investigations regarding the unlawful manufacture, possession, distribution, and transportation of controlled substances, as well as conspiracies associated with criminal narcotics, in violation of 21 U.S.C. §§ 841(a)(1), 841(c)(2), 843, and 846.

This Affidavit is made to support a complaint charging Thai Hoang NGUYEN, Davindei SINGH, Sokha BHOPAL and Vath LIM with knowingly and intentionally conspiring to possess with intent to distribute cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 846.

## PROBABLE CAUSE

In early September, 2008, Sokha BHOPAL contacted a Kern County Sheriff's Department Confidential Source, hereafter referred to as the CS, and requested the CS find him a source of supply for kilogram quantities of cocaine. The CS has provided reliable information in the past, which has led to the seizure of narcotics and the arrest of narcotics traffickers. The CS is cooperating in this investigation for monetary compensation. The CS stated BHOPAL was in the process of moving from the Los Angeles area to Dallas, Texas. The CS stated BHOPAL recently purchased a truck stop in Dallas, Texas. During negotiations, the CS offered to introduce BHOPAL to a source of supply (SOS) for cocaine. However, BHOPAL told the CS that he did not want to deal with anyone but the CS.

On September 4, 2008, at the direction of the Kern County Sheriff's Department, the CS met with BHOPAL and quoted BHOPAL a price of $17,000 per kilogram of cocaine. While with the CS, BHOPAL called an unknown third party and quoted the third party the price per kilogram of cocaine. BHOPAL indicated to the CS that the third party was the one with the money for the cocaine transaction. BHOPAL indicated to the CS that he wanted to purchase at least 50 kilograms of cocaine,     which would equal approximately $850,000.

2

1  During their conversations, BHOPAL indicated to the CS that he was on his way to Dallas,
2  Texas to complete his move. BHOPAL told the CS to contact him when the SOS for the
3  cocaine was ready and BHOPAL would return to Bakersfield.
4        Since that meeting, BHOPAL was in frequent contact with the CS inquiring about the
5  cocaine. The CS was instructed by law enforcement officers to tell BHOPAL that the SOS
6  for the cocaine was in Mexico and would not be returning until after the weekend. BHOPAL
7  also told the CS he wanted to purchase a total of 85 kilograms of cocaine.
8        On September 17, 2008, the DEA Bakersfield Resident Office and the Kern County
9  Sheriff's Department conducted an undercover "flash" operation involving Thai Hoang
10 NGUYEN, Sokha BHOPAL, Davindei SINGH and a white male co-conspirator known only
11 as "Bobby." During the operation, the CS and Senior Deputy Jose Perez, acting in an
12 undercover capacity, met with NGUYEN, BHOPAL, SINGH and BOBBY, who had traveled
13 from Los Angeles in a white Pontiac four door sedan, California license plate number
14 6BRS803. As the negotiations continued, it became apparent that NGUYEN was the primary
15 individual attempting to purchase cocaine from Senior Deputy Perez. During the operations,
16 Senior Deputy Perez flashed NGUYEN, BHOPAL, SINGH and BOBBY multiple kilograms
17 of cocaine. During the flash of cocaine, BOBBY cut open one of the kilograms to sample the
18 quality of the cocaine. After cutting into the kilogram, BOBBY gave a "thumbs up" to
19 Deputy Perez and returned to BHOPAL, NGUYEN and SINGH. During further negotiations,
20 NGUYEN agreed to meet Deputy Perez on September 18, 2008, and show Deputy Perez
21 approximately 1.4 million dollars which he intended to use to purchase the cocaine.
22       After the negotiations, Deputy Perez spoke to NGUYEN. During the conversation,
23 NGUYEN and Deputy Perez agreed upon the price of $1,487,500.00 for 85 kilograms of
24 cocaine. NGUYEN indicated he was having difficulty locating his "accountant" to obtain the
25 money for the cocaine purchase. NGUYEN indicated he would be ready with the money for
26 the cocaine transaction on Friday, September 19, 2008.
27       On the morning of September 19, 2008, agents from the DEA Bakersfield Resident
28 Office established surveillance in and around the area of the Fairfield Inn on Pico Canyon Rd.
   in Santa Clarita, California. At approximately 10:30 a.m., I observed NGUYEN and Vath

3

LIM standing in the parking lot of the Fairfield Inn. A short time later, I observed BHOPAL arrive in the parking lot of the Fairfield Inn driving the above mentioned white Pontiac four-door sedan California license plate number 6BRS803. BHOPAL parked the white Pontiac exited the vehicle and began to talk to NGUYEN and LIM.

At approximately 11:00 a.m., SA Randy Hoover observed NGUYEN and LIM enter into a white Dodge mini-van, California license plate number 6CVH643, and depart from the area of the Fairfield Inn. I followed the white mini-van south on Interstate 5, south on Interstate 405, north on Highway 101 and off on the Topanga Canyon Road exit. At that time, I lost sight of the white mini-van and returned to the Fairfield Inn. During a post arrest interview of LIM, LIM stated that after he and NGUYEN exited onto Topanga Canyon Road, they stopped at a Starbucks coffee shop. LIM stated NGUYEN told him to go into the Starbucks and wait. LIM related that when he returned from the Starbucks there were two large black suitcases in the white mini-van. LIM said an unknown individual delivered the suitcases while he was in the Starbucks.

At approximately 12:23 p.m., SA Hoover observed the white mini-van arrive and park in the parking lot of the Fairfield Inn. LIM exited the white mini-van carrying a large black suitcase that appeared to be very heavy. NGUYEN likewise exited the white mini-van carrying a large black suitcase also appearing to be very heavy. LIM and NGUYEN entered into the Fairfield Inn.

At approximately 1:00 p.m., SA Hoover observed LIM exit the Fairfield Inn carrying a large black suitcase and a black back pack. LIM placed the black suitcase and the black back pack into the white mini-van. Also at that time, BHOPAL exited the Fairfield Inn carrying a second large black suit case and placed it into the trunk of the white Pontiac. SA Hoover observed BHOPAL, NGUYEN and SINGH enter into the white Pontiac and LIM enter into the white mini-van. A short time later, the mini-van and the Pontiac departed the area of the Fairfield Inn in tandem.

At the direction of law enforcement, the CS placed several phone calls to BHOPAL. During the abovementioned phone calls, the CS told BHOPAL to meet the CS and Deputy Perez in the parking lot of the Taco Bell located on Rosedale Highway in Bakersfield,

4

California.

At approximately 2:25 p.m., the white mini-van and the white Pontiac arrived in the parking lot of the Taco Bell and parked in the area of Deputy Perez's and the CS's vehicles. BHOPAL and NGUYEN exited the white Pontiac and walked over to where the CS and Deputy Perez were standing. LIM stayed seated in the white mini-van and SINGH stayed in the Pontiac. Deputy Perez greeted BHOPAL and NGUYEN. At that time, BHOPAL told Deputy Perez they were ready and that it (money for the cocaine) was all there. BHOPAL said some of the money was in the mini-van and some was in the Pontiac. NGUYEN told Deputy Perez that he could take the money. Deputy Perez responded that he needed to see the money. NGUYEN took Deputy Perez over to the rear of the mini-van and lifted the tail gate. In the rear of the mini-van, Deputy Perez observed a large black suitcase containing a large quantity of United States currency. NGUYEN then told Deputy Perez that the rest of the money was in the Pontiac. A short time later, deputies from the KCSO and agents from the DEA arrested NGUYEN, BHOPAL, SINGH and LIM.

Based on the information in this affidavit, I believe there is probable cause that Thai Hoang NGUYEN, Sokha BHOPAL, Davindei SINGH and Vath LIM did knowingly and intentionally conspire to possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

*Trent O'Neill* (signature)

Trent O'Neill, Special Agent

United States Drug Enforcement Administration

5

|    |                                                      |
|----|------------------------------------------------------|
| 1  |                              Reviewed and approved as to from: |
| 2  |                                                      |
| 3  |                              /s/ Karen A. Escobar    |
| 4  |                              Confirmation e-mailed to |
| 5  |                              Honorable Theresa A. Goldner |
| 6  |                              Karen A. Escobar        |
| 7  |                              Assistant United States Attorney |
| 8  |                                                      |
| 9  | Subscribed to and Sworn before me                    |
| 10 | On this __19th__ day of September, 2008 at 8:36 p.m. |
| 11 |                                                      |
| 12 | [signature]                                          |
| 13 | Honorable Theresa A. Goldner                         |
| 14 | United States Magistrate Judge                       |

6